IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

TURNKEY LINUX LTD., an Israeli Corporation,

        Plaintiff,

        v.

PRIVATE INTERNET ACCESS, INC.
formerly known as
London Trust Media Incorporated,
an Indiana Company,

        Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

For its Complaint, Plaintiff alleges as follows:

### THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Turnkey Linux Ltd., ("Plaintiff" or "Turnkey") is an Israeli company, having its main place of business at Har Sinai St 24/1, Raanana 44307 Israel, is a company that is known for software integration. The founders have a background specializing in Internet security and privacy.

2. On information and belief, Defendant London Trust Media Incorporated ("LTMI") is an Indiana company having its principal place of business at 150 5555 DTC Parkway Suite 360, Greenwood Village, CO, 80111, USA, is a leading supplier of VPN software.  LTMI now does business using the name Private Internet Access, Inc. ("PIA").

3. Venue is proper in this District because the Parties agreed at Paragraph 14 of the November

12, 2017 Board Adviser Agreement (the "BAA"), attached hereto as Exhibit A, that "any action arising out of this agreement shall be brought exclusively in a court of competent jurisdiction located in Denver County, Colorado.

## JURISDICTION

4.     There is diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), LTMI being an Indiana corporation with a principal place of business in Denver Colorado and Plaintiff being an Israeli Corporation.  The amount at issue in this action is greater than $75,000.00.

## GENERAL ALLEGATIONS

5.     Plaintiff incorporates the allegations in Paragraphs 1-9 above as though fully restated here.

6.     Plaintiff is suing to obtain the full consideration that was promised by LTMI in a November 12, 2017 Board Advisory Agreement (the "BAA").  A true and correct copy of that agreement is attached hereto at Exhibit A.

7.     Pursuant to Article 13 of the BAA, the BAA can't be amended, modified or waived except in a writing signed by the parties.

8.     Pursuant to Schedule 2 of the BAA, Turnkey is entitled, among other things, to a $6,000.00 per month retainer payment.  In addition, pursuant to a November 12, 2017 Phantom Stock Agreement (attached hereto as Exhibit B), Turnkey received 250 Phantom Shares of LTMI.  These shares were granted pursuant to the Phantom Stock Ownership and Long Term Incentive Plan, a copy of which is attached as Exhibit C to this Complaint.  Pursuant to Article 6 of the Phantom Stock Agreement, no amendment, suspension or termination of the Plan is valid without Turnkey's written consent.

9.     Under the plan as originally agreed, members of the Phantom Stock Plan are entitled to be paid based on the value of shares in LTMI.  Specifically, the agreed-on payout for one share in the Phantom Stock Plan would be equal to the sales price of a share in LTMI as determined at the time of

the change of corporate control.

10. Turnkey has never signed any written document approving modification of any of the BAA, the Phantom Stock Agreement, or the Phantom Stock Ownership and Long Term Incentive Plan.

11. On or around October 8, 2018, LTMI unilaterally announced by e-mail that LTMI had decided "to stop monthly payments to our Advisory Board." Despite this material breach of the BAA, Turnkey has continued to provide advisory services and continues to be available today to provide the agreed-on services.

12. On or around December 21, 2018, Mr. John Arsenault wrote to Turnkey on behalf of LTMI, indicating that LTMI wanted to make changes to its phantom stock arrangements.

13. Such changes required Turnkey's consent. Arsenault asked for such consent but Turnkey did not consent. As such, any purported changes to the BAA, the Phantom Stock Agreement or the Phantom Stock Ownership and Long Term Incentive Plan are invalid and/or not binding on Turnkey.

14. On or around November 18, 2019, there was a merger between Kape Technologies PLC, KLTM5 Holdings, Inc., LTMI Holding Company, London Trust Media Incorporated.

15. This merger agreement constituted a change of control within the meaning of the Phantom Stock Agreement and, therefore, LTMI was obligated to pay Turnkey the fair value of its phantom shares. Since the merger Turnkey has been trying to determine the fair value of its Phantom Shares and receive the payment it is owed

16. Despite Turnkey's efforts, LTMI has not been willing to provide information sufficient to determine the correct value of the shares.

17. On information and belief, under the merger transaction, "major" Phantom Stock owners were paid more per phantom share than "minor." However, no such categories of Phantom Stock owners were authorized under the plan as agreed to between Turnkey and LTMI.

18. There is no basis under the plan documents, as agreed to by Turnkey, for LTMI to pay more per share to some Phantom Stock holders than it paid to others.

19. On information and belief, the consideration for the Phantom Shares held by the major holders included, in addition to cash, shares in Kape Technologies PLC, which is a publicly traded company. Turnkey was not offered such shares.

20. The price of Kape Technologies PLC publicly traded shares doubled during the week following the announcement of its merger with LTMI. On information and belief, the reason that Kape's stock rose so quickly was because the LTMI enterprise valuation, set during the merger, was too low.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT, PHANTOM SHARES

21. Plaintiff incorporates the allegations in Paragraphs 1-21 above as though fully restated here.

22. Pursuant to the contractual agreements discussed above, LTMI gave Turnkey 250 Phantom Shares in the company. Under those agreements, there was only one category of Phantom Share holder, and all Phantom Shareholders had equal rights and were entitled to the same payout per share.

23. Because Turnkey never agreed to any modification of the Phantom Stock Ownership and Long Term Incentive Plan, Turnkey should be paid 0.5 percent of the total consideration that was paid to the owners of actual shares in LTMI at the time of the merger. To the extent that those owners were paid in cash, Turnkey should similarly be paid in cash. To the extent that those owners were given shares of Kape Technologies PLC in return for their Phantom Stock, Turnkey should be paid the same amount.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT, MONTHLY PAYMENTS

24. Plaintiff incorporates the allegations in Paragraphs 1-24 above as though fully restated here.

25. Pursuant to the contractual agreements discussed above, LTMI agreed to pay Turnkey $6,000.00 per month in return advisory services. The BAA has never been terminated, and LTMI should be ordered to pay the balance owed from October 8, 2018 to the present, and to continue to pay the agreed monthly amount until the agreement is terminated.

## THIRD CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

26. Plaintiff incorporates paragraphs 1 through 26 as though fully set forth herein.

27. LTMI breached the covenant of good faith and fair dealing by developing and implementing a scheme to distinguish among phantom shareholders by awarding more compensation to "major" phantom shareholders than to "minor" phantom shareholders.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court grant the following relief against the Defendants and each of them:

A. Find that LTMI breached its contractual obligations;

B. Award Plaintiff the fair value of 0.5 percent ownership of LTMI as of the date of the merger as damages for LTMI's breach of its Phantom Share obligation to Turnkey;

C. Award Plaintiff $6,000.00 per month from October 8, 2018 to the present as damages for LTMI's breach of its monthly payments obligations

D. Award of prejudgment interest on benefits awarded, all of which would have accrued by the time of the filing of this Complaint.

E. Provide such other relief as the Court deems equitable and just.

Plaintiff hereby demands that this matter be tried to a jury.

DATED this 11th day of December, 2020.

LAW OFFICE OF DAVID A. MAKMAN

/s/ *David Alan Makman*

David Alan Makman
**LAW OFFICES OF DAVID A. MAKMAN**
483 Seaport Court, Suite 103
Redwood City, CA 94063
Tel:   (650) 242-1560
David A. Makman, Bar No. 178195
david@makmanlaw.com

**Attorney for Plaintiff**
Turnkey Linux Ltd.