DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

# LONDON TRUST MEDIA INCORPORATED

## AMENDED AND RESTATED
## PHANTOM STOCK OWNERSHIP
## AND
## LONG TERM INCENTIVE PLAN

### APRIL 12, 2017

This London Trust Media Incorporated Amended and Restated Phantom Stock Ownership and Long Term Incentive Plan (this "Plan") is adopted by London Trust Media Incorporated, an Indiana corporation (the "Corporation").

## ARTICLE 1
## GENERAL

1.1.    Purpose.  The purposes of this Plan are: (a) to encourage and motivate selected employees or independent contractors to contribute to the successful performance of the Corporation and the growth of the market value of the Corporation's Common Stock, (b) to achieve a unity of purpose between such employees or independent contractors and the Corporation's shareholders in the achievement of the Corporation's primary long term performance objectives by providing ownership style opportunities for such employees or independent contractors, and (c) to retain such employees or independent contractors by rewarding them with the potential for future compensation.  These objectives will be promoted through the granting of Phantom Stock to designated Eligible Individuals pursuant to the terms of this Plan.

1.2.    Administration.

(a)    This Plan shall be administered by the Board.  Members of the Board who are Plan participants are prohibited from voting on any matter relating to this Plan, its construction, amendment or administration.  The Board may designate any officers or employees of the Corporation to assist in the administration of this Plan, to execute documents and to perform such other ministerial duties as may be delegated to them by the Board.

(b)    Subject to the provisions of this Plan, the determinations and the interpretation and construction of any provision of this Plan by the Board shall be final and conclusive upon persons affected thereby.  By way of illustration and not of limitation, the Board shall have the sole and absolute discretion:

(i)    to construe and interpret this Plan, all Phantom Stock Agreements and the terms of all Phantom Stock granted hereunder and to determine the terms and provisions (and amendments thereof) of the Phantom Stock Agreements and Phantom Stock granted under this Plan (which need not be identical);

DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

(ii)    to define the terms used in this Plan and all Phantom Stock Agreements;

(iii)   to prescribe, amend and rescind this Plan and rules and regulations relating to this Plan;

(iv)    subject to Section 1.3 below, to designate the Eligible Individuals to whom, and the time or times at which, Phantom Stock shall be granted and the number of shares of Phantom Stock, as and when applicable, to be granted;

(v)     to determine the value pertaining to Phantom Stock; and

(vi)    to make all other determinations and interpretations necessary or advisable for the administration of this Plan.

(c)     In determining the Eligible Individuals to whom Phantom Stock may be granted and the number of shares of Phantom Stock to be covered by each grant, the Board shall take into account the nature of the services rendered by such Eligible Individual, the present and potential contributions of the Eligible Individual to the success of the Corporation and such other factors as the Board shall deem relevant.  An Eligible Individual who has been granted Phantom Stock under this Plan may be granted additional shares of Phantom Stock under this Plan if the Board shall so determine.

(d)     The granting of Phantom Stock pursuant to this Plan is in the exclusive discretion of the Board, and until the Board acts, no individual shall have any Phantom Stock under this Plan.  The terms of this Plan shall be interpreted in accordance with this intent.

(e)     All decisions made by the Board pursuant to the provisions of this Plan shall be final and binding on the Corporation and the Participants.

1.3.    <u>Shares Available For Phantom Stock</u>.

(a)     The aggregate number of shares of Phantom Stock available for grant under this Plan shall be 10,000 (subject to such adjustments as may be made under this Section 1.3 below).  In the event that shares of Phantom Stock granted under this Plan to any Eligible Individual expire or are terminated unredeemed, such shares thereafter shall be deemed available in the pool for the granting of Phantom Stock under this Plan; provided, however, if the expiration or termination date of any Phantom Stock is beyond the term of existence of this Plan, then unredeemed or terminated Phantom Stock shall not reactivate the existence of this Plan and therefore shall not be available for additional grants of Phantom Stock under this Plan.

(b)     In the event the outstanding shares of Common Stock are increased, decreased, changed into or exchanged for a different number or kind of securities as a result of a stock split, reverse stock split, stock dividend, recapitalization, merger, share

DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

exchange acquisition, combination or reclassification, appropriate proportionate adjustments will be made in:

        (i)     the aggregate number of shares of Phantom Stock which may be granted under this Plan (including any Phantom Stock already issued and outstanding);

        (ii)    the exercise or other purchase price or value pertaining to Phantom Stock; and

        (iii)   other matters determined on a per share basis under this Plan or any Phantom Stock Agreement. Any such adjustments will be made only by the Board, and when so made will be effective, conclusive and binding for all purposes with respect to this Plan and all Phantom Stock then outstanding.

        (c)    No such adjustments will be required by reason of (i) the issuance or sale by the Corporation for cash of additional shares of its Common Stock or securities convertible into or exchangeable for shares of its Common Stock, or (ii) the issuance of shares of Common Stock in exchange for shares of the capital stock of any corporation, financial institution or other organization acquired by the Corporation in connection therewith, except as such issuance shall immediately result in an increase or decrease in the fair market value of Common Stock. Notwithstanding the provisions of this Section 1.3(c), the Board may in its sole discretion make adjustments (including dilution adjustments) by reason of the occurrence of the events in Section 1.3(b)(iii), 1.3(c)(i), or 1.3(c)(ii).

        (d)    The grant of Phantom Stock pursuant to this Plan shall not affect in any way the right or power of the Corporation to make adjustments, reclassification, reorganizations or changes of its capital or business structure or to merge or to consolidate or to dissolve, liquidate or sell, or transfer all or any part of its business or assets.

        (e)    No fractional shares of Phantom Stock shall be issued under this Plan for any adjustment under Section 1.3(b).

**ARTICLE 2**
**PHANTOM STOCK**

    2.1.   <u>Grant of Phantom Stock</u>.  The Corporation may grant Phantom Stock to Eligible Individuals as provided in this Article 2. Phantom Stock will be deemed granted pursuant to this Article 2 only upon a vote by the Board, effective on the date of the vote, and shall require the execution and delivery of a Phantom Stock Agreement by the Eligible Individual and a duly authorized officer of the Corporation. The aggregate number of shares of Phantom Stock that may be granted to all Participants under this Plan shall not exceed the total number of shares of Phantom Stock in the Plan pool, as described above in Section 1.3(a).

DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

2.2.    Terms and Conditions of Phantom Shares.

(a)    All shares of Phantom Stock must be granted within ten years of the Effective Date.

(b)    The Board may make more than one grant of Phantom Stock to an Eligible Individual.

(c)    Each grant of Phantom Stock shall be evidenced by a Phantom Stock Agreement in form and substance satisfactory to the Board in its sole and absolute discretion, consistent with the provisions of this Article 2.

(d)    Except as otherwise determined by the Board in its sole and absolute discretion and set forth in a Phantom Stock Agreement, Phantom Stock shall vest according to the following schedule:

(i)    one-third of the Phantom Stock shall vest on the first anniversary of the grant date, subject to the Participant remaining in active full-time employment with the Corporation or a subsidiary of the Corporation through such date;

(ii)    one-third of the Phantom Stock shall vest on the second anniversary of the grant date, subject to the Participant remaining in active full-time employment with the Corporation or a subsidiary of the Corporation through such date; and

(iii)    one-third of the Phantom Stock shall vest on the third anniversary of the grant date, subject to the Participant remaining in active full-time employment with the Corporation or a subsidiary of the Corporation through such date.

(e)    All shares of Unvested Phantom Stock shall vest upon a Change in Control Transaction, subject to the participant remaining in active full-time employment with the Corporation or a subsidiary of the Corporation on the date of the closing of the Change in Control.

(f)    All shares of Unvested Phantom Stock held by a Participant shall immediately be forfeited and shall cease to be issued or outstanding upon any termination of employment (with or without cause) of the Participant with the Corporation or any of its subsidiaries.

(g)    All shares of Vested Phantom Stock held by a Participant shall immediately be forfeited and cease to be issued and outstanding upon any For Cause Event applicable to such Participant.

DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

(h)    A Participant shall have no rights as a shareholder of the Corporation with respect to any shares of Common Stock solely as a result of this Plan or the granting of any Phantom Stock.

2.3.    Redemption of Phantom Stock.

(a)    At the closing of a Change in Control Transaction, the Corporation shall redeem all issued and outstanding shares of Vested Phantom Stock at a price per share equal to the Phantom Stock Value; provided, however, that the Corporation shall not redeem any shares of Vested Phantom Stock that would result in any Participant receiving an "excess parachute payment" within the meaning of Section 280G of the Code.   Any shares not so redeemed because of the application of the immediately preceding proviso shall automatically terminate and be of no further force or effect as of the date of the Change in Control.

(b)    As a condition to the redemption of the shares of Vested Phantom Stock under Section 2.3(a) above, the Participant will pay to the Corporation in cash, or in such other form as the Corporation may determine in its discretion, the amount of the Tax Withholding Liability required in connection with such exercise; provided, the Corporation may withhold for such taxes from any cash payment due the Participant with respect to the redemption of his or her Vested Phantom Stock.

(c)    The monies due upon redemption of the Vested Phantom Stock under Section 2.3(a) above shall be payable to the Participant in a lump sum amount at the closing of the Change in Control Transaction either in United States dollars, in cash or by check, Corporation draft or money order payable to the order of the Participant.

2.4.    Term and Termination of Phantom Stock.

(a)    Except as provided in Section 2.4(b) below, and to the extent not previously redeemed under Section 2.3 above, each share of Phantom Stock, whether Vested or Unvested, will automatically terminate and expire and be of no further force or effect on the 10th anniversary of their date of Grant.   The Board may, in its discretion, specify in the Phantom Stock Agreements other events that will result in the termination of the grant of Phantom Stock.

(b)    The Board may, from time to time and in its discretion, designate certain Eligible Recipients as being in a select group of management, employees or independent contractors who may materially affect the performance of the Corporation and whose Phantom Shares will terminate only upon the occurrence of a For Cause Event.

2.5.    Restrictions on Transfer.   Shares of Phantom Stock granted under Article 2 may not be sold, assigned, transferred, conveyed, pledged, hypothecated, encumbered, loaned, gifted, attached, or levied upon except by will or the laws of descent and distribution.

DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

## ARTICLE 3
## MISCELLANEOUS

3.1.  <u>Captions and Headings; Gender and Number</u>.  Captions and paragraph headings used herein are for convenience only, do not modify or affect the meaning of any provision herein, are not a part of, and shall not serve as a basis for, interpretation or construction of this Plan.  As used herein, the masculine gender shall include the feminine and neuter, and the singular number shall include the plural, and vice versa, whenever such meanings are appropriate.

3.2.  <u>Governing Law</u>.  Without regard to the principles of conflicts of laws, the laws of the State of Indiana (except to the extent preempted by applicable Federal law) shall govern and control the validity, interpretation, performance, and enforcement of this Plan.

3.3.  <u>Amendment and Discontinuance</u>.  The Board may amend, suspend or discontinue this Plan at any time or from time to time; <u>provided</u>, that, subject to Section 3.7 below,  no action of the Board will materially decrease the benefits accruing under an existing Phantom Stock Agreement without the written consent of the affected Participant.

3.4.  <u>Severable Provisions</u>.  The Corporation intends that the provisions of this Plan shall each be deemed to be effective on an independent basis, and that if one or more of such provisions, or the operative provisions thereof, shall be deemed invalid, void or voidable, the remainder of this Plan shall continue in full force and effect.

3.7  <u>Section 409A Intent</u>.  To the extent this Plan is subject to Section 409A of the Code, it is intended that this Plan, each Phantom Stock Agreement and all shares of Phantom Stock granted under this Plan shall be in compliance with Section 409A of the Code.  In that respect the Corporation, by action of its Board, reserves the right to amend this Plan and any Phantom Stock Agreements and any outstanding Phantom Stock, to the extent deemed necessary or appropriate either to exempt the Phantom Stock from taxation under Section 409A of the Code or to comply with the requirements of Section 409A of the Code.  Notwithstanding the foregoing, neither the Corporation nor the Board shall have any obligation to take any action to prevent the assessment of any additional tax or penalty on any Participant or beneficiary under Section 409A of the Code and neither the Corporation nor the Board will have any liability to any Participant or beneficiary for such tax or penalty.

3.8  <u>No Employment or Other Service Rights.</u> Nothing in this Plan or any Phantom Stock Agreement executed pursuant thereto shall confer upon any Participant any right to continue to serve the Corporation in the capacity in effect at the time the shares of Phantom Stock were granted or shall affect the right of the Corporation to terminate the employment or service of a Participant with or without notice and whether or not a For Cause Event occurred.

3.9  <u>Unfunded Benefit.</u>  All amounts provided under this Plan shall be paid from the general assets of the Corporation and no separate fund shall be established to secure payment. To the extent that any person acquires a right to receive payment from the Corporation under this

DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

Plan, such right shall be no greater than the right of any unsecured general creditor of the Corporation.

## ARTICLE 4
## DEFINITIONS

The following terms shall have the meanings set forth below. Additional terms defined in this Plan shall have the meanings ascribed to them when first used in this document.

4.1    "Board" means the board of directors of the Corporation as constituted from time to time.

4.2    "Change in Control Transaction" means an event or series of events which (i) result in persons or entities that are not owners of the Corporation on the Effective Date becoming beneficial owners of more than 50 percent of the voting power of all Common Stock then outstanding, (ii) result in the Corporation and its subsidiaries selling or otherwise transferring all or substantially all of their consolidated assets, or (iii) result in the consummation of an initial public offering of the Corporation's Common Stock. Notwithstanding the foregoing, a Change in Control Transaction shall only be considered to occur under this definition if the Change in Control Transaction constitutes a change in ownership of the Corporation, a change in the effective control of the Corporation or a change in the ownership of a substantial portion of the Corporation's assets under Section 409A of the Code. For the avoidance of doubt, no distribution to the shareholders of the Corporation, including distributions made incident to a leveraged dividend recapitalization, or any leveraged dividend recapitalization transaction, shall constitute a Change in Control Transaction.

4.3    "Code" means the Internal Revenue Code of 1986, as amended, or any successor statute, and the Treasury Regulations and other authoritative guidance issued thereunder.

4.4    "Common Stock" means the common shares of the Corporation.

4.5    "Corporation" has the meaning set forth in the preamble of this Plan.

4.6    "Effective Date" means May 1, 2014.

4.7    "Eligible Individual" means a full-time employee of the Corporation or an independent contractor of the Corporation who is selected by the Board, in its sole discretion, to participate in this Plan.

4.8    "For Cause Event" means (i) a Participant's failure (as determined by the Board) to adhere to any Corporation policy (including, without limitation, the Corporation's polices relating to confidentiality of trade secrets and propriety information) or to perform the material duties of his or her employment, (ii) a Participant's appropriation (or attempted appropriation) of a material business opportunity of the Corporation, including attempting to secure or securing any personal profit in connection with any transaction entered into on behalf of the Corporation, (iii) a Participant's misappropriation (or attempted misappropriation) of any of the Corporation's

DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

funds or property, (iv) a Participant's conviction of, indictment for (or its procedural equivalent), or entering of a guilty plea or plea of no contest with respect to, a felony (or the equivalent), or (v) a Participant's breach of any agreement (including any confidentiality agreement or restrictive covenant agreement) with the Corporation or any of its subsidiaries or duty of loyalty to the Corporation or any of its subsidiaries. The Board shall have sole discretion to determine whether a For Cause Event has occurred, and its determination shall be final.

4.9     "Participant" means an Eligible Individual who is selected to participate in this Plan and receives a Phantom Stock award and any former Eligible Individual who continues to be entitled to a benefit under this Plan. An Eligible Individual becomes a Participant upon the Eligible Individual's acknowledgment, execution and delivery to the Corporation of a Phantom Stock Agreement.

4.10     "Phantom Stock" means an award of an unfunded, unsecured promise by the Corporation to pay to a Participant the Phantom Stock Value subject to the terms and conditions of this Plan and the applicable Phantom Stock Agreement. Phantom Stock exists only within the meaning of this Plan and conveys neither rights of Common Stock ownership nor any rights as an employee or independent contractor except as expressly agreed to in writing by the Corporation and the Eligible Individual.

4.11     "Phantom Stock Agreement" means a written agreement between the Corporation and an Eligible Individual evidencing the grant of Phantom Stock that specifies the number of shares of Phantom Stock awarded to the Eligible Individual and any additional terms and conditions as may be determined by the Board in its sole and absolute discretion. Each Phantom Stock Agreement shall be subject to the terms and conditions of this Plan.

4.12     "Phantom Stock Value" means an amount equal to the value that the Corporation's shareholders receive in connection with the Change in Control Transaction in respect of one Common Share, after reduction for all expenses of the Change in Control Transaction. The Board's determination of Phantom Stock Value shall be final and binding on all parties.

4.13     "Plan" has the meaning set forth in the preamble.

4.15     "Tax Withholding Liability" means all federal and state income taxes, social security taxes, and any other taxes applicable to the compensation income arising from any transaction under this Plan or the granting or redemption of any shares of Phantom Stock which the Corporation is required by applicable law to withhold.

4.16     "Unvested Phantom Stock" means any shares of Phantom Stock which have not vested in accordance with this Agreement or the applicable Phantom Stock Agreement.

4.17     "Vested Phantom Stock" means any shares of Phantom Stock which have vested in accordance with this Agreement or the applicable Phantom Stock Agreement.

DocuSign Envelope ID: E1DE04E6-D63D-4793-AE07-99DC61645E03

IN WITNESS WHEREOF, the Corporation hereby adopts this Amended and Restated Phantom Stock Ownership and Long Term Incentive Plan on April 12, 2017.

**LONDON TRUST MEDIA INCORPORATED**

By: _____

Ted Kim

Its: Chief Executive Officer

18581353.6